## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHAD E. ST. CLAIR                    )
                                     )
                     Plaintiff,      )        Civil Action No. 21-1837
                                     )
v.                                   )        Magistrate Judge Lenihan
                                     )
RONALD V. HARRIS, JR.                )
                                     )        ECF Nos. 40 & 47
                     Defendant.      )

## <u>MEMORANDUM OPINION</u>

Presently before the Court are cross motions for summary judgment filed by the parties.

For the reasons discussed below, the Motion for Summary Judgment filed by Plaintiff, Chad E.

St. Clair (ECF No. 40) will be denied.  The Motion for Summary Judgment filed by Defendant

Ronald V. Harris, Jr. (ECF No. 47) will be granted as to the defamation claim and Fourteenth

Amendment Due Process claim, but denied as to all other claims.

I.      <u>FACTS</u>[1]

Plaintiff, Chad E. St. Clair ("Plaintiff") filed this civil rights action against Defendant

Ronald V. Harris, Jr. ("Harris"), a Pennsylvania State Trooper, asserting claims of false arrest,

abuse of process, malicious prosecution, defamation and illegal search and seizure pursuant to 42

U.S.C. § 1983.

---

[1] Plaintiff, proceeding pro se, has filed a Statement of Undisputed Material Facts that does not technically comply with the Court's Local Civil Rule 56.B.1.  In his Memorandum of Law in Support of his Motion for Summary Judgment, Plaintiff includes not only his legal argument but also his Statement of Undisputed Material Facts which he states is "attached to this document listed as exhibits and incorporated herein by reference."  *See* Pl.'s Mem. of Law in Supp. of Summ. J., ECF No. 41 at 2, ¶ 4.  Plaintiff's exhibits are actually attached to his motion for summary judgment (ECF No. 40).  However, his memorandum of law includes statements of fact in separately numbered paragraphs with citations to the supporting exhibits which he has sworn are true and correct under penalty of perjury.  ECF No. 41 at 15.  To the extent Plaintiff's statements are factual and supported by the record, the Court will consider them in deciding the motions.    Plaintiff has not filed a responsive concise statement to Defendant Harris' Statement of Material Facts Not in Dispute, as required by Local Civil Rule 56.C.1 but, for the most part, Plaintiff only appears to be contesting Defendant's statements in paragraph 17 of ECF No. 49.  Thus, with the exception of paragraph 17, Defendant Harris' Statement of Material Facts will be deemed admitted. *See* LCvR 56.E.

On August 14, 2020, Harris was assisting a fellow Trooper, Luke Martin, with a traffic stop along the roadside of PA Route 43 North in Fayette County.  Def.'s Stmt. of Mat. Facts Not in Dispute ("SMF") ¶¶ 4-5, ECF No. 49 at 2.  During the traffic stop, Harris was notified by a passing motorist, later identified as Ronald Glenn Chapman (who was on a parallel roadway), that his wife was currently watching the vacant house across the street being burglarized.  *Id.* at ¶ 5.  Harris was advised that the address for the residence was 21 Skyler View Lane in Georges Township.  *Id.* at ¶ 6.  Trooper Harris immediately entered his patrol car along with Trooper Martin and traveled to the reported location.  *Id.* at ¶ 7.  While en route, Trooper Harris received a radio dispatch advising of a "burglary in progress at this location."  *Id.*

Upon arriving at 21 Skyler View Lane, Trooper Harris observed a two-story red brick home that, at the time of the incident, was vacant.  *Id.* at ¶ 8.  Trooper Harris also observed a Chevrolet S10 pickup truck parked in the driveway.  *Id.*  Trooper Harris observed two individuals, subsequently identified as Chad E. St. Clair ("Plaintiff") and James Edward Dennis ("Dennis"), outside this vehicle.  *Id.* at ¶ 9.  Mr. Chapman had preceded Trooper Harris to this location and was blocking the driveway with his vehicle such that Plaintiff could not leave the scene.  *Id.*  When questioned, both Dennis and Plaintiff stated that they thought the house was a cool looking house and parked around back to waste some time before traveling to their destination.  *Id.* at ¶ 10.  Plaintiff related that he never exited the truck.  *Id.*

Harris and Trooper Martin walked around to the rear of the residence and found an unsecured door that provided access to the kitchen.  *Id.* at ¶ 11. No other individuals were found on the premises.  *Id.*  Harris concluded that the house was vacant and that nothing in the house appeared to have been removed or disturbed.  *Id.*

While Trooper Martin remained with Plaintiff and Dennis, Harris walked across the street and interviewed the woman who had initially reported the incident, Misty Dawn Chapman. *Id.* at ¶ 12. Ms. Chapman resided at 20 Skyler View Lane, across the street from the vacant house. *Id.* at ¶ 13. Ms. Chapman told Harris that she was outside her house when she observed a black Chevrolet S10 pickup with white doors drive up the driveway of 21 Skyler View Lane. *Id.* She further indicated that she lost sight of the vehicle when it drove behind the house. *Id.* Ms. Chapman related that there had been previous incidents with persons breaking into this vacant residence to steal items left behind by previous owners. *Id.* Ms. Chapman also stated that shortly after she lost sight of the pickup truck behind the house, she observed a man in a gray shirt walk pat the first floor window of the residence. *Id.* at ¶ 14. At that time, Ms. Chapman contacted her husband who had in turn notified Harris. *Id.*

Harris obtained written statements from both Ms. Chapman and Mr. Chapman. *Id.* at ¶ 15. The Chapmans also provided photographs from their home security system. *Id.* While conversing with Dennis, Harris observed that Dennis was wearing a gray shirt. *Id.* at ¶ 16. While conversing with Plaintiff, Harris observed that he was only wearing one flip flop.[2] *Id.* at ¶ 17. A canvas of the rear of the residence yielded the finding of a matching gray and white flip flop. *Id.* This item was subsequently seized and entered into evidence on Property Record B04-39787. *Id.*

---

[2] Plaintiff contests that he was wearing flip flops at the time of the alleged crime. He states in his Statement of Facts that Defendant Harris did not provide a photo of him wearing the matching flip flop. He also states that he requested in discovery that Defendant Harris provide a photo of both of his feet in view on the date of the alleged crime, which would show he was actually wearing brown work boots at that time. ECF No. 41 at 6, ¶¶ 16-17. In discovery, Plaintiff requested photos of both his feet in view at the crime scene from the Defendant's body cam footage or from the Uniontown booking center or the Uniontown PSP barracks while he was being detained. In response, Defendant Harris stated that the PSP does not utilize body worn cameras and he was unaware of any relevant footage from either the Uniontown booking center or Uniontown PSP barracks. ECF No. 40-3, Resp. 2.

Based on the information received and his observations at the scene, Harris took Plaintiff and Dennis into custody without incident and advised them of their *Miranda* warnings. *Id.* at ¶ 18.

A vehicle inventory was conducted and no items from within the residence were located within the vehicle. *Id.* at ¶ 19. The vehicle was then towed from the scene by Professional Auto. *Id.* at ¶ 20. Based on the results of the vehicle inventory, Harris did not seek a search warrant for the vehicle. Consequently, the vehicle remained in the custody of Professional Auto. *Id.* Plaintiff was still at the scene when Professional Auto arrived to tow the vehicle. *Id.* After leaving the scene, Harris had no further dealings with Plaintiff's vehicle. *Id.* at ¶ 21.

Thereafter, Harris filed charges against both Plaintiff and Dennis. *Id.* at ¶ 22. Based on information obtained through investigation, Harris charged Plaintiff with Burglary (Overnight Accommodations—No Person Present (18 Pa. Con. Stat. §3502(a)(2)); Criminal Conspiracy (18 Pa. Cons. Stat. § 903(a)(1)); and Criminal Trespass (18 Pa. Cons. Stat. § 3503(a)(1)(ii)). *Id.*

Harris personally did not forward or send, or cause to be forwarded or sent, any information about this incident to any media outlet. *Id.* at ¶ 23.

Harris compiled an investigative report related to this incident. *Id.* at ¶ 24. Harris also prepared the Criminal Complaint and Affidavit of Probable Cause for the charges filed against Plaintiff. *Id.* at ¶ 25. Plaintiff was arraigned that same day and released on bond. *Id.* at ¶ 26. In or around April 29, 2021, the charges were withdrawn and the case dismissed after the Chapmans declined to cooperate with the prosecution and there were no other witnesses. *Id.* at ¶ 27. After the criminal charges against Plaintiff were *nolle prossed*, certain evidentiary items were disposed of due to internal PSP guidelines. *Id.* at ¶ 28.

On December 20, 2021, Plaintiff, proceeding *pro se*, initiated this civil rights action by filing a Motion for Leave to Proceed *in forma pauperis*, which was granted and the Complaint was docketed on January 3, 2022.  ECF Nos. 1, 4 & 6.  Plaintiff filed an Amended Complaint (ECF No. 12) on January 24, 2022 and subsequently was granted leave to file a Second Amended Complaint which was docketed on April 6, 2022 (ECF No. 19).  The Second Amended Complaint, which is the operative complaint in this action, asserts claims for false arrest, abuse of process, slander, malicious prosecution, defamation, and illegal search and seizure.  ECF No. 19 at ¶ 21.  For relief, Plaintiff seeks a declaratory judgment, a preliminary and permanent injunction to cease the harassment of Plaintiff, compensatory and punitive damages, and recovery of costs.  ECF No. 19 at ¶¶ 26-31.

Harris filed an Answer to the Second Amended Complaint (ECF No. 25).  Discovery has closed and the parties have each moved for summary judgment.  Plaintiff's Motion for Summary Judgment and supporting exhibits (ECF No. 40) and Brief in Support (ECF No. 41) were filed on November 15, 2022.  Harris filed a Motion for Summary Judgment (ECF No. 47), Brief in Support (ECF No. 48), Concise Statement of Material Facts (ECF No. 49), and Appendix (ECF No. 50) on December 30, 2022.  As the motions have been fully briefed and responded to, the cross motions for summary judgment are ripe for disposition.

II.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the pleadings, documents, electronically stored information, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (a) & (c).  Summary judgment may be granted against a party

who fails to adduce facts sufficient to establish the existence of any element essential to that

party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying

evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant

must show that the evidence of record is insufficient to carry the non-movant's burden of proof.

*Id*. Once that burden has been met, the non-moving party must set forth "specific facts showing

that there is a *genuine issue for trial*" or the factual record will be taken as presented by the

moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v.*

*Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added

by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury

could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc*., 477 U.S. 242,

248 (1986). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to
> weigh the evidence and determine the truth of the matter but to determine
> whether there is a genuine issue for trial. . . . [T]here is no issue for trial
> unless there is sufficient evidence favoring the nonmoving party for a jury
> to return a verdict for that party. If the evidence is merely colorable, or is
> not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

When the parties have filed cross-motions for summary judgment, as in this case, the

summary judgment standard remains the same. *Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464

F.Supp.2d 425, 430 (M.D.Pa. 2006). "When confronted with cross-motions for summary

judgment, . . . 'the court must rule on each party's motion on an individual and separate basis,

determining, for each side, whether a judgment may be entered in accordance with the summary

judgment standard.'" *Id*. (quoting *Marciniak v. Prudential Fin. Ins. Co. of Am*., 184 F. App'x 266,

270 (3d Cir. 2006)). "If review of [the] cross-motions reveals no genuine issue of material fact,

then judgment may be entered in favor of the party deserving of judgment in light of the law and

undisputed facts." *Id.* (citing *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998)).

III.    ANALYSIS

Plaintiff seeks relief in this civil action pursuant to 42 U.S.C. § 1983 for alleged

violations of his rights under the Fourth and Fourteenth Amendments.[3]  Section 1983 of the Civil

Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or any
> other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress....

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate

that the conduct in the complaint was committed by a person or entity acting under color of state

law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the

Constitution or the laws of the United States. *Piecknick v. Commw. of Pa.*, 36 F.3d 1250, 1255-

56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations

of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95

F.3d 1199, 1204 (3d Cir. 1996).  Both of these requirements have been met here as it is

uncontested that Defendant Harris was acting under color of state law.  Thus, the Court turns to

the parties' arguments as to each of Plaintiff's claims.

---

[3] Plaintiff alleges violations of this rights under the Fourteenth Amendment, however, it is clear that his claims for
false arrest, malicious prosecution, and illegal search and seizure implicate Fourth Amendment rights.  As Plaintiff
is proceeding *pro se*, the Court will proceed to analyze these claims under the Fourth Amendment.

A.      Probable Cause

In support of his motion for summary judgment, Plaintiff submits that his claims of false arrest, abuse of process, malicious prosecution, defamation,[4] and illegal search and seizure against Defendant Harris are all valid because Defendant Harris fabricated and omitted evidence on the affidavit of probable cause used to obtain a warrant for his arrest.  However, in his supporting memorandum of law Plaintiff appears to focus mainly on his malicious prosecution, abuse of process, and illegal search and seizure claims.  *See* ECF No. 41 at 4-5, ¶¶ 12-13. Defendant Harris has filed a cross motion for summary judgment on all of Plaintiff's claims.  At the crux of both motions is whether probable cause existed for Defendant Harris to arrest Plaintiff for the charged offenses.

"Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396 , 401 (3d Cir. 1996)).  An officer has probable cause to arrest a person "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).  In determining whether probable cause exists, "arresting officers must consider plainly exculpatory evidence in addition to inculpatory evidence."  *Harvard v. Cesnalis*, 973 F.3d 190, 200 (3d Cir. 2020)(citing *Wilson*, 212 F.3d at 790).  "This is true 'even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.'" *Id*. (citing *Wilson,* 212 F.3d at 790 (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999))).

---

[4] In his Second Amended Complaint, Plaintiff also asserts a claim for slander, but he does not discuss that claim in either his motion for summary judgment or his memorandum of law in support.

When evaluating probable cause at the summary judgment stage, the Court of Appeals has instructed courts "to assess probable cause based upon the 'totality-of-the-circumstances' available to the arresting officer and view those circumstances in the light most favorable to [the arrestee]." *Harvard*, 973 F.3d at 200 (quoting *Dempsey v. Bucknell Univ.,* 834 F.3d 457, 467-68 (3d Cir. 2016) (citation omitted)).  The Court of Appeals noted that "[a]s part of this assessment, [the court] must determine whether the plainly exculpatory evidence available to the arresting officer 'outweighs the probable cause otherwise established' through inculpatory evidence." *Id.* (quoting *Dempsey*, 834 F.3d at 478, 490).  Moreover, the Court of Appeals noted that "[t]his totality-of-the-circumstances inquiry is 'necessarily fact-intensive' and thus 'it will usually be appropriate for a jury to determine whether probable cause existed.'" *Id.* (quoting *Dempsey*, 834 F.3d at 468 and citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) ("Generally, the question of probable cause in a section 1983 damage suit is one for the jury.")).

In *Dempsey*, the Court of Appeals noted the tension inherent in evaluating probable cause at the summary judgment stage:

> On the one hand, the summary judgment standard asks whether there is a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), viewing the evidence "in the light most favorable to the non-moving party," *Reedy*, 615 F.3d at 210. On the other hand, the probable cause standard by definition allows for the existence of conflicting, even irreconcilable, evidence. *See*, *e.g*., *Wright*, 409 F.3d at 603. . . .While it is axiomatic that at the summary judgment stage, we view the facts in the light most favorable to the nonmoving party, it does not follow that we exclude from the probable cause analysis unfavorable facts an officer otherwise would have been able to consider. Instead, we view all such facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a "fair probability" that a crime occurred. Only then would the existence of conflicting evidence rise to the level of a "genuine dispute as to any material fact" such that summary judgment would be inappropriate. Thus, where the question is one of probable cause, the summary judgment standard must tolerate conflicting evidence to the extent it is permitted by the probable cause standard.

834 F.3d at 468 (footnote omitted).

Here Plaintiff contends that the affidavit sworn by Trooper Harris omitted exculpatory information and contained fabricated information and that an accurate affidavit would not establish probable cause. To prevail on this claim, Plaintiff must show: (1) "that the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,'" and (2) "that those assertions or omissions were 'material, or necessary, to the finding of probable cause.'" *Id.* at 469 (citing *Wilson*, 212 F.3d at 786-87 (quoting *Sherwood*, 113 F.3d at 399)).

The *Dempsey* court has set forth the role of the courts in reviewing probable cause determinations made by law enforcement:

> [T]he role of the courts is not that of the much-maligned "Monday morning quarterback" whose critiques are made possible only by the benefits of hindsight. Rather, federal courts review the record to ensure that the proper procedure for determining probable cause was followed. If it was not, the court itself must engage that procedure and determine whether probable cause existed in spite of that failure. As we have described in prior cases, in conducting this analysis, the district court must identify any improperly asserted or omitted facts and, if it determines there were reckless misrepresentations or omissions, "excise the offending inaccuracies and insert the facts recklessly omitted" from the affidavit and assess whether the reconstructed affidavit would establish probable cause. *Wilson*, 212 F.3d at 789. If it would, the plaintiff's claim fails because "even if there had not been omissions and misrepresentations" in the affidavit presented to the magistrate judge, there would have been probable cause for the charges against the plaintiff. *Id.*

*Id.* at 469-70.  With these precepts in mind, the Court turns to Plaintiff's argument that Trooper Harris fabricated evidence and omitted key exculpatory evidence from the affidavit of probable cause with a reckless disregard for the truth.

1.      <u>Reckless Disregard for the Truth</u>

First, the Court must determine whether Plaintiff "adduced sufficient evidence that a reasonable jury could conclude that [Defendant Harris] made statements or omissions that he 'knew [were] false, or would have known [were] false except for his reckless disregard for the truth.'"  *Wilson*, 212 F.3d at 787 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)) (other citation omitted) (alterations in original).  In *Wilson*, the plaintiff presented a hybrid allegation—that the defendant allegedly doctored some of the facts and omitted others from the affidavit.  In that situation, the *Wilson* court found that reckless disregard for the truth means different things when dealing with omissions and assertions and therefore the methodology for analyzing each must be different.  *Id.*  Similarly here, Plaintiff presents a hybrid allegation with regard to the affidavit of probable cause.  Thus, the Court will analyze the omissions and alleged false assertions separately.

### a. Omissions

In *Dempsey*, the Court of appeals reiterated the test for whether information was recklessly omitted:

> To determine whether information was recklessly omitted, we ask whether the officer withheld "a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Wilson*, 212 F.3d at 788 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). In doing so, we exercise "scrupulous neutrality"; we do not engage the "deliberately slanted perspective" we must use to make the ultimate determination as to whether summary judgment is appropriate. *Reedy*, 615 F.3d at 214 n. 24.

> Inherent in this inquiry are two requirements. First, the officer must have knowledge of the information alleged to have been recklessly omitted. For this reason, we look only to the information available to the officer at the time of the swearing of the affidavit of probable cause. Second, the information must be relevant to the existence of probable cause. The relevance requirement "ensures that a police officer does not 'make unilateral decisions about the materiality of information'" by enabling a

magistrate to decide independently, on the basis of an affidavit containing all relevant information, whether the circumstances give rise to probable cause. *Id*. at 213 (quoting *Wilson*, 212 F.3d at 787). At the same time, however, it recognizes that for practical reasons courts simply "cannot demand that police officers relate the entire history of events leading up to a warrant application." *Wilson*, 212 F.3d at 787.

834 F.3d at 470-71 (footnote omitted).

In his brief in support of summary judgment, Plaintiff submits that the following

information was recklessly omitted from the affidavit of probable cause:

> (1)  Upon their arrival at the scene, Trooper Harris and Trooper Martin walked around to the rear of the residence and found an unsecured door which provided access to the kitchen.  A sweep of the residence yielded no further individuals.  The house is currently vacant and nothing was seemingly removed or disturbed.  ECF No. 41 at 7, ¶¶ 20-21; Pl.'s Ex. 6, ECF No. 40-6.

> (2)  An inventory for Plaintiff's vehicle was conducted and no items from the residence were located within the vehicle after which the vehicle was towed from the scene by Professional Auto.  ECF No. 41 at 10, ¶¶ 37-38; Pl.'s Ex. 1, ECF No. 40-1.

> (3)  Photographs from the Chapmans' security system showed that neither he nor Dennis exited their vehicle.[5]  ECF No. 41 at 11, ¶¶ 41-42, 45; Pl.'s Ex. 1, ECF No. 40-1.

In addition, Defendant Harris submits that the following information also be included in a

reconstructed affidavit:

> (4)  When Trooper Harris was conversing with Dennis at the scene, he noticed that Dennis was wearing a gray shirt.

> (5)  St. Clair related that he never exited the truck.

> (6)  While conversing with Plaintiff, Trooper Harris noticed that he was only wearing one flip flop.  A canvas of the rear of the residence yielded

---

[5] Plaintiff requested copies of these photographs in discovery but was informed by Defendant Harris that they were no longer available.  ECF No. 40-3, Request No. 1.  In the General Offense Report, Defendant Harris stated that photographs from the Chapmans' security system were provided in addition to the statements of Misty and Ronald Chapman so it appears that this information was available at the time the affidavit of probable cause was prepared. ECF No. 40-1.

the finding of his other gray and while flip flop.  This item was
subsequently seized and entered into evidence.

(7)  At the station, Trooper Harris attempted to interview Plaintiff and
Dennis.  Both denied that they had entered the residence or traveled there
to commit a burglary.

The Court further notes that the following information contained in Defendant Harris'

Offense Report but omitted from the affidavit will also be considered:

(8)  St. Clair and Dennis told Trooper Harris they thought the house was
cool looking and parked around back to waste time before traveling to
their destination.

After a close review, the Court finds that in the context of this case and including the

allegations contained in the original affidavit, the omitted information contained in paragraphs

(1) through (5), (7), and (8) above is information any reasonable person would know that a judge

would want to know in making a probable cause determination, and therefore, should be

included in a reconstructed affidavit for purposes of a materiality analysis.  The information

contained in paragraph (1) regarding the status of the vacant resident when the troopers arrived—

unsecured door, vacant, nothing disturbed or removed, and no one inside—and in paragraph (2)

regarding an inventory of Plaintiff's vehicle, is information relevant to the underlying criminal

offenses with which Plaintiff was charged.  The information in paragraph (4) regarding Trooper

Harris' observation that Dennis was wearing a gray shirt correlates to witness Misty Chapman's

statement that she observed a man wearing a gray shirt inside the vacant residence, and tends to

exculpate Plaintiff.  The information in paragraphs (7) and (8) are relevant to Plaintiff's lack of

criminal intent.  The information in paragraph (5) lends support to Plaintiff's position that he did

not enter the vacant residence.

With regard to the omission of the photographs from the Chapman's security system in

paragraph (3), Plaintiff points out that, according to the General Offense Report, Defendant

13

Harris reviewed footage and photographs provided from the Chapmans' security camera, but he does not mention in the affidavit or the General Offense Report what he observed on the camera footage or photographs. ECF No. 41 at 13, ¶ 51. Plaintiff submits that the reason Defendant Harris omitted this information from the affidavit is because it either showed that the bay window of the vacant house can be seen from the Chapmans' house or there was a photo or footage of someone in the vacant house. *Id*. If that were the case, Plaintiff maintains that not only would it have been part of the affidavit but would also have been detailed in the General Offense Report and the case would not have been dismissed for lack of evidence to prosecute. *Id.* In response, Defendant Harris submits that this argument raises an evidentiary matter that would have been more properly reserved to the time of a criminal trial if the charges had not been dismissed. ECF No. 51 at 9. Unfortunately, the photographs that Plaintiff claims show that neither he nor Dennis exited their vehicle are no longer available,[6] and there is nothing in the record to suggest what they show. Given their unavailability, the Court cannot determine their particular relevance or exculpatory value to the crimes with which Plaintiff was charged.

In further support for including the photographs, Plaintiff claims that he heard Misty Chapman say to Defendant Harris that she could not see the bay window of the vacant house from her residence. If the Chapmans' photographs confirm this, then omitting this information from the affidavit was an omission with a reckless disregard of the truth. ECF No. 41 at 14, ¶ 53. The Court disagrees. First of all, as the photographs are no longer available, it is pure speculation on Plaintiff's part as to what they show. Moreover, in her written witness statement,

---

[6] It is somewhat concerning that some of the evidence was disposed of rather quickly in the underlying criminal case. As Plaintiff points out, non-consequential evidence such as the photo of the vacant house, the photo of the stray flip flop in the backyard, and Plaintiff's vehicle remain available while potentially exculpatory and factually relevant evidence such as the photographs from the Chapmans' security system and photos of Plaintiff's feet are not available. ECF No. 41 at 13, ¶ 52; ECF No. 40-3.

Ms. Chapman states that she was *outside* her residence when she observed a man in a gray shirt walk past the bay window of the vacant house.  So even if the photographs would confirm that Ms. Chapman could not see the bay window from her residence, they are not relevant to her observations from *outside* her residence.  Therefore, Plaintiff's statement in paragraph (3) above will not be included in the reconstructed affidavit.

As to the information contained in paragraph (6), Plaintiff disputes that he was wearing flip flops at the time of the alleged criminal activity and avers that he was wearing brown work boots at that time.  ECF No. 41 at 6, ¶¶ 17-19.  While this information would likely be information a reasonable person would know that a judge would want to know in making a probable cause determination, it is being offered by *Defendant Harris* as *inculpatory* evidence to support a finding of probable cause *in a reconstructed affidavit* in response to Plaintiff's motion for summary judgment in which he claims the affidavit lacked probable cause.  Usually, and like St. Clair here, a plaintiff challenging probable cause asks the court to include exculpatory information recklessly omitted from the original affidavit in a reconstructed affidavit.   The omitted information that Defendant Harris asks this Court to include in a reconstructed affidavit is, however, contested by Plaintiff as being fabricated.  As such, the Court will analyze the information under the *Wilson* methodology for fabricated assertions in part b. below.

### b.  Assertions

The Court of Appeals in *Wilson* explained what is required for determining whether assertions in an affidavit were made with a reckless disregard for the truth:

> Unlike omissions, assertions can be made with reckless disregard for the truth even if they involve minor details—recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth. In applying the reckless disregard test to assertions, we have borrowed from the free speech arena and equated reckless disregard for the truth with a "high degree of awareness of [the

> statements'] probable falsity." *Lippay v. Christos*, 996 F.2d 1490, 1501 (3d
> Cir.1993) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209,
> 13 L.Ed.2d 125 (1964)); *see also United States v. Clapp*, 46 F.3d 795, 800
> (8th Cir.1995) (reckless disregard for the truth is exhibited when
> expressing that which was not "believed or appropriately accepted" as
> true). An assertion is made with reckless disregard when "viewing all the
> evidence, the affiant must have entertained serious doubts as to the truth of
> his statements or had obvious reasons to doubt the accuracy of the
> information he reported." *Clapp*, 46 F.3d at 801 n. 6.

212 F.3d at 78.  Here, Plaintiff claims in his sworn statement[7] that Defendant Harris was aware

that no crime had been committed and was in the process of releasing Plaintiff from the scene

when it was brought to Defendant Harris' attention that another PSP trooper had been fired over

an incident concerning Plaintiff.  ECF No. 41 at ¶46.  In retaliation for that trooper's firing,

Plaintiff maintains that Defendant Harris fabricated evidence to charge Plaintiff with a crime.  *Id.*

at ¶ 47.  The assertions that Plaintiff claims were fabricated by Defendant Harris include the

following:

> (1)  While conversing with Plaintiff, Trooper Harris noticed that he was
> only wearing one flip flop.  A canvas of the rear of the residence yielded
> the finding of his other gray and white flip flop.  Plaintiff contends that
> Trooper Harris did not provide a picture of Plaintiff wearing the matching
> flip flop because he was actually wearing brown work boots at the time of
> the incident;
>
> (2)  Misty Chapman's witness statement is fabricated where she states that
> from outside her residence she observed a man wearing a gray shirt walk
> past a first floor bay window inside the vacant residence (ECF No. 40-4),
> because Plaintiff claims he overheard Misty Chapman tell Defendant
> Harris at the scene that she could not see the windows of the vacant house
> from her house.  ECF No. 41 at ¶¶ 22-23.  Plaintiff contends that the
> Chapman residence is two tenths of a mile down the street from the vacant

---

[7] In paragraph 46 of his Memorandum of Law, Plaintiff states, under penalty of perjury, that "on 8/14/20, Defendant Harris was aware that no crime was committed and was in the process of releasing [him] from the scene when it was brought to the Defendants attention that Justin Rokavec was fired from PSP over an incident concerning Plaintiff." ECF No. 41 at 11.  As the factual part of that statement—that Defendant Harris was in the process of releasing Plaintiff from the scene when it was brought to his attention that another trooper was fired from PSP over an incident with Plaintiff—as well as other statements in Plaintiff's memorandum of law which are factual and based on first-hand observations, are sworn to under penalty of perjury, they will be treated as if they were contained in an affidavit in support of summary judgment.  Even though not titled as such, the Court finds that Plaintiff be granted some leeway given his pro se status.

house and due to several large bushy trees in the front yard of the vacant house, it would be impossible for anyone to see inside the bay window from the Chapman residence.  *Id.* at ¶¶ 26-27.

(3)  In the affidavit of probable cause, Trooper Harris stated that at approximately 17:03 hours, witness 2, Ronald Chapman, flagged him down on Pa 43 N and advised him that an active burglary was in progress at 21 Skyler View Lane.  ECF No. 40-9.  The affidavit of probable cause also states that Ronald Chapman arrived at the vacant house as Plaintiff and his co-conspirator were attempting to leave and blocked their exit with his vehicle.  *Id.*  Plaintiff claims that it would have been impossible for Ronald Chapman to be in two places at once.  ECF No. 41 at ¶ 31.

(4)  Plaintiff contends that because both Misty and Ronald Chapman refused to testify, both of their witness statements were fabricated to create the probable cause needed to secure a warrant for his arrest.  ECF No. 41 at ¶ 33.

After a careful review of the allegedly fabricated assertions, the Court finds that in the context of this case and viewing the evidence in the light most favorable to Plaintiff, the assertion in paragraph (1) was made with reckless disregard for the truth, or at least raises a question of fact as to whether Defendant Harris made the assertion about the flip flops with reckless disregard for the truth.  Plaintiff's sworn statement in paragraph 46 of his memorandum of law certainly casts doubt as to Defendant Harris' reasons or motive in pressing charges against Plaintiff, especially in light of all the evidence.  Moreover, the Court notes that Defendant Harris did not include the assertion regarding the flip flops in the original affidavit but is only now attempting to include it in a reconstructed affidavit to bolster his argument that probable cause existed to arrest Plaintiff.  Defendant Harris argues that the assertion regarding the flip flops cast doubt as to Plaintiff's claim that neither he nor Dennis never exited the vehicle and therefore supports a finding of probable cause if included in the affidavit.  ECF No. 51 at 9. Plaintiff contends that this assertion was not included in the original affidavit because he was actually

wearing brown work boots at the time of the incident,[8] and therefore, Defendant Harris would have known that his assertion about Plaintiff wearing one flip flop was untruthful.  Thus, the Court finds that Plaintiff has raised a question of fact as to whether Defendant Harris' assertion regarding the flip flops in paragraph (1) was made with reckless disregard of the truth.  As such, the Court will not add the assertion in paragraph (1) to the reconstructed affidavit.

As to the assertions in paragraph (2), (3) and (4), the Court finds that Plaintiff has not shown, or raised a question of fact, that Defendant Harris made those assertions with a reckless disregard for the truth or had an obvious reason to doubt the accuracy of the information he reported.  As Defendant Harris correctly points out, beyond Plaintiff's own conclusory assertions, he offers no proof that these statements, which on their face show them to be written and signed by Misty Chapman and Ronald Chapman, have been fabricated.  ECF No. 51 at 8 (citing ECF No. 40-4 & 40-10).  With regard to the assertions in paragraph (2), even if Plaintiff overheard Misty Chapman tell Defendant Harris that she could not see the windows of the vacant house from her house, this statement is not contradicted by her written statement which states that she was *outside* of her house when she observed a man in a gray shirt walk past a first floor window inside the vacant house.  Depending on where Ms. Chapman was located outside her house, it is entirely possible that she was able to observe the front bay window of the vacant house from her vantage point.  Moreover, the photo of the front of the vacant resident shows that although there are bushy trees along the front of the house, the bay window is not blocked by trees.  Thus, the Court finds that Defendant Harris' summary of Misty Chapman's witness statement in the affidavit  was not made with a reckless disregard for the truth, nor does the

---

[8] Plaintiff points out that there were no photos taken of Plaintiff's feet at the time he was detained at the scene or while at the Uniontown booking center and PSP Barracks.  ECF No. 41 at 6, ¶¶ 16-19. Had photos been taken, they would have shown he was wearing brown work boots.

evidence Plaintiff points to provide an obvious reason to doubt the accuracy of Misty Chapman's witness statement.  Thus, Defendant Harris' summary of Misty Chapman's witness statement described in paragraph (2) above will remain in the reconstructed affidavit.

With regard to the assertions in paragraph (3), there is simply no evidence to contradict or cast doubt on the truthfulness of the statement that witness Ronald Chapman was able to flag down Trooper Harris on Pa 43 N and then travel to the vacant residence in time to block Plaintiff's exit from the driveway.  Defendant Harris submits that given the sequence of events, it was not impossible for Mr. Chapman to have made the initial report to him and then return home and block Plaintiff and Dennis from leaving the vacant property.  ECF No. 51 at 8-9.  In addition, Defendant Harris contends that there is no question that Plaintiff and Dennis were still at 21 Skylar View Lane when he arrived on scene where he observed Mr. Chapman blocking Plaintiff and Dennis from leaving the driveway of the vacant residence.  *Id.* at 9.  Plaintiff offers no evidence other than pure speculation on his part.  This is insufficient to show that Defendant Harris' assertion regarding witness Ronald Chapman's involvement in the investigation was made with a reckless disregard for the truth or had an obvious reason to doubt the accuracy of the information he reported about Mr. Chapman.  Accordingly, the assertion in paragraph (3) above will remain in the reconstructed affidavit.

Finally, as to the assertions in paragraph (4), there is simply no evidence to suggest that because Misty and Ronald Chapman refused to testify, their witness statements were fabricated. On May 24, 2021 in a follow-up report, Defendant Harris stated that "[d]ue to the home being abandoned and having no owner, in conjunction with the witness refusing to cooperate, both cases against DENNIS and ST. CLAIR have been withdrawn."  ECF No. 40-12.  Witnesses may decline to participate in subsequent criminal proceedings for a variety of legitimate reasons.

Mere speculation as to why the witnesses refused to cooperate, which is all that exists here, is not sufficient to show or raise a question of fact that their statements were fabricated. Accordingly, Defendant Harris' summary of the Chapmans' witness statements will remain in the reconstructed affidavit.

2.    <u>Reconstructed Affidavit</u>

*Dempsey* requires that when the district court "determines that information was asserted or omitted in an affidavit of probable cause with at least reckless disregard for the truth, it must perform a word-by-word reconstruction of the affidavit." 834 F.3d at 470 (footnote omitted). This reconstruction consists of excising the offending inaccuracies and inserting the facts recklessly omitted. *Wilson*, 212 F.3d at 789. Based on the discussion above, the reconstructed affidavit[9] would read as follows:

**RECONSTRUCTED AFFIDAVIT OF PROBABLE CAUSE**

Your AFFIANT is employed by the Pennsylvania State Police as a Trooper, assigned to the Troop B Uniontown Barracks, Patrol Unit.

On 08/14/20 at approximately 1703 hrs, I was on patrol in full uniform and operating a marked police unit. I was stationary along PA 43 N when a male flagged me down and advised me that an active burglary in progress was taking place at 21 Skyler view Ln. As I moved from my position, it was confirmed by dispatch that a call had come in for a burglary in progress at this location.

Upon arrival, I observed the aforementioned male (who for purposes of this affidavit shall be referred to as WITNESS 2) and two unidentified males. These males were subsequently identified as ST. CLAIR and his co-conspirator DENNIS. Both individuals were detained.

**<u>Myself and Trooper MARTIN walked around to the rear of the residence and found an unsecured door which provided access to the kitchen. A sweep of the residence yielded no further individuals. The house is currently vacant and nothing was seemingly removed or disturbed.</u>**

---

[9] The additions to the reconstructed affidavit appear in bold font and are underlined.

I then located the individual who for the purposes of this affidavit will be referred to as WITNESS 1 and conducted interview.

Interview of WITNESS 1:
      On 08/14/20 at approximately 1730 hrs, WITNESS 1 was interviewed at their residence.  They related that they were outside their residence when they observed a black Chevrolet S10 with white on the doors drive up and behind 21 Skylar View Ln.  He/She knows that this residence is currently abandoned and owned by the bank.  WITNESS 1 then saw a man in a gray shirt (DENNIS) walk past a first floor bay window inside the house.

      I then interviewed WITNESS 2 at scene.

Interview of WITNESS 2:
      On 08/14/20 at approximately 1753 hrs, WITNESS 2 was interviewed at scene.  They related to me that they were called by WITNESS 1 and alerted that a black S10 had driven up behind 21 Skyler View Ln.  They then advised WITNESS 2 that they had seen a male (DENNIS) walking inside the house.  WITNESS 2 stated that as they were pulling on the scene and up the drive of 21 Skyler View Ln, the S10 was attempted to leave.  WITNESS 2 blocked them in so they were unable to leave.  WITNESS 2 was the individual who flagged me down.

**While conversing with DENNIS, I  noticed that he was wearing a gray shirt.**

**Both DENNIS and ST. CLAIR claimed that they thought the house was a cool looking house and parked around back to waste some time before traveling to their destination.  ST. CLAIR related that he never exited the truck.**

**An inventory for the Chevrolet S10 was conducted and no items from within the residence were located within the vehicle.**

**Once at the station, I attempted to interview DENNIS and ST. CLAIR.  Both denied that they had entered the residence or traveled there to commit a burglary.**

      Based on the aforementioned facts and information, I request that [ST. CLAIR][10] answer to the charges listed herein.

---

[10] The Court notes that all of the copies of the Affidavit of Probable Cause included in the record request that "Dennis" answer to the charges listed therein.  Thus, there is no Affidavit of Probable Cause in the record requesting that Plaintiff St. Clair answer the charges in the affidavit.  For purposes of deciding the cross motions for summary judgment, the Court will assume that the affidavit of probable cause addressed to St. Clair is identical to the one

3.    <u>Materiality</u>

At this final step, the Court must determine whether the assertions and omissions made with a reckless disregard of the truth, considered in the context of the affidavit as a whole, were "material, or necessary, to the finding of probable cause." *Wilson*, 212 F.3d at 789 (quoting *Sherwood*, 113 F.3d at 399) (internal quotation marks and footnote omitted); *Dempsey*, 834 F.3d at 477.  "To determine the materiality of the misstatements and omissions, [the court must] excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789 (citing *Sherwood*, 113 F.3d at 399).  If the reconstructed affidavit would establish probable cause, then summary judgment should be granted because even if there had not been omissions from Trooper Harris' presentation to the magisterial district judge, Plaintiff would have been arrested.  *Id.*

Here Plaintiff was charged with burglary in violation of 18 Pa. Cons. Stat. Ann. § 3502(a)(2), criminal trespass in violation of 18 Pa. Cons. Stat. Ann. § 3503(a)(1)(ii), and criminal conspiracy in violation of 18 Pa. Cons. Stat. Ann. § 903(a)(1).  *See* Police Criminal Complaint against Chad E. St. Clair, ECF No. 50-1 at 23-25.  Defendant Harris argues that even if the information in paragraphs (1) and (2) that Plaintiff claims was recklessly omitted from the affidavit were included in a reconstructed affidavit, there would be sufficient information to warrant the reasonable belief that either Plaintiff or Dennis had made an agreement to unlawfully enter the vacant house at 21 Skylar View Lane.  ECF No. 51 at 7.  Defendant Harris further argues that the "fact that they were thwarted in their effort to remove any items from the home or that [he] was unable to determine with certainty that nothing had been removed from the house at

---

presented for Dennis.  Moreover, the Court notes that none of the copies of the affidavit are signed by either the affiant, Trooper Harris, or the magisterial district judge.

the time the affidavit was prepared does not undermine the conclusion of probable cause given the other evidence available." *Id.* at 7-8.  The Court disagrees and finds Defendant Harris' latter argument somewhat disingenuous.  Nowhere in the General Offense Report (ECF 50-1 at 18-19) or in his Declaration submitted in support of summary judgment (ECF No. 50-1 at 2-5) does Defendant Harris state that at the time he prepared the original affidavit of probable cause, Plaintiff and Dennis were thwarted in their effort to remove any items from the vacant home or that he was unable to determine with *certainty* that nothing had been removed from the vacant house.  Defendant Harris' contention—the "fact" that they were *thwarted* from removing any items from the vacant house is not a "fact" but an assumption that is not supported by the evidence or at least raises a question of fact.  Moreover, Defendant Harris states in his Declaration that "it did not appear that anything had been removed or disturbed", (ECF No. 50-1 at 3, ¶ 15) and in the General Offense Report that "nothing was seemingly removed or disturbed" (*id.* at 18), which stands in stark contrast to his contention on summary judgment that "he was unable to determine with *certainty* that nothing had been removed …."  As noted in *Orsatti*, "[p]robable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."  71 F.3d at 483.

In determining whether the reconstructed affidavit lacks probable cause, the court must weigh the inculpatory evidence against any exculpatory evidence that was available to Trooper Harris at the time of arrest.  Here the inculpatory evidence against Plaintiff is not strong.  Plaintiff is identified as one of two individuals found at the scene when Trooper Harris arrived.  He was in the driveway of the vacant house by his vehicle which was being blocked from exiting the driveway by Mr. Chapman when Defendant Harris arrived.  Although Misty Chapman observed the Chevrolet S10 vehicle drive up and behind the vacant residence and observed a

man in a gray shirt walking in front of the bay window inside the vacant house, and Trooper

Harris received a call from dispatch while en route to the vacant residence of a reported burglary

in progress, which could arguably cause a reasonable person to belief an offense was being

committed, this information does not implicate or identify Plaintiff as the person allegedly

committing the charged offenses.

On the other hand, the exculpatory information that was recklessly omitted from the

affidavit has substantial relevance:  (1) that the troopers found an unsecured door to the kitchen

with no one inside, the house was vacant and nothing was seemingly removed or disturbed; (2)

Plaintiff told Trooper Harris that he never exited the vehicle; (3) an inventory of the vehicle

revealed that no items from within the residence were located within the vehicle; (4) when

Trooper Harris was conversing with Dennis at the scene he noticed that Dennis was wearing a

gray shirt; (5) both Plaintiff and Dennis denied that they entered the residence or traveled there to

commit a burglary; and (6) Plaintiff and Dennis told Trooper Harris that they thought the house

was cool looking and parked around back to waste some time before traveling to their

destination.  These exculpatory facts, when added to other exculpatory facts included in the

original affidavit—that Misty Chapman stated she saw a man wearing a gray shirt inside the

vacant house—and weighed against the inculpatory information are strong enough to undermine

a finding of probable cause to arrest Plaintiff, or at the very least, raise a question of fact for the

jury.

Considering the totality of the evidence, the Court concludes that a reasonable juror could

conclude that the information in the reconstructed affidavit does not raise a fair probability that

Plaintiff committed any of the crimes with which he was charged.  The evidence strongly

suggests that Dennis was the one observed inside the vacant house as he was wearing the gray

shirt and Misty Chapman observed a man with a gray shirt inside the vacant residence.  She in no

way indicated that Plaintiff was inside the house or otherwise disputed that Plaintiff remained in

the vehicle until he was attempting to leave and his vehicle was blocked by Mr. Chapman.

Indeed, Misty Chapman told Defendant Harris that she lost sight of Chevy S10 truck when it

drove behind the vacant house and thus was unable to observe whether Plaintiff actually exited

his vehicle when it was behind the vacant house.  As such, there are no assertions in the

reconstructed affidavit that raise a fair probability that Plaintiff entered the vacant residence as is

required for the crime of burglary, 18 Pa. Cons. Stat. Ann. § 3502(a)(2).[11]  Nor are there any

assertions in the reconstructed affidavit that raise a fair probability that there was any forceable

or other unlawful entry to the vacant house which is required for criminal trespass under 18 Pa.

Cons. Stat. Ann. §3503(a)(1)(ii).[12]  Moreover, without any assertions to show that there was a

fair probability that Plaintiff committed the crimes of burglary or criminal trespass, probable

cause to commit a criminal conspiracy is likewise lacking as there are no underlying criminal

offenses about which to conspire.

      This conclusion is further buttressed by Plaintiff's sworn statement that Trooper Harris

was about to release Plaintiff from the scene when it was brought to Trooper Harris' attention

that another trooper (Rokavec) was fired from PSP over an incident concerning Plaintiff, and that

despite a lack of evidence of any criminal activity, Trooper Harris charged him with three

criminal offenses in retaliation for the trooper being fired.  ECF No 41 at 11-12, ¶¶ 46-48.

Plaintiff also claims that in an attempt to further punish him, Defendant Harris continued the

---

[11] Moreover, the Court notes that a defense to the offense of burglary is that the building was abandoned at the time of the alleged commission of the burglary.  18 Pa. Cons. Stat. Ann. §3502(b)(1).

[12] Section 3503(a)(1)(ii) requires that to be convicted of criminal trespass that a person without license or privilege "breaks into" any building, and "breaks into" is defined as "[t]o gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access", *id.* at § 3503(a)(3).

preliminary hearing four times over an eight-month period, with all charges being dismissed on April 29, 2021 when the preliminary hearing was finally held. *Id.* at 12, ¶¶ 48-49; *see also* Criminal Docket, No. MJ-14302-CR-0000281-2020, ECF No. 40-14. This information certainly raises a question as to Defendant Harris' motive in arresting Plaintiff for burglary, criminal trespass and criminal conspiracy.[13]

Thus, viewing all of the information in the reconstructed affidavit in the context of this case, the Court concludes that a reasonable juror, considering this information in its totality and in the light most favorable to Plaintiff, could find that no probable cause existed. Accordingly, because Plaintiff's claims of false arrest, malicious prosecution, and illegal search and seizure include probable cause as a necessary element, Defendant Harris' motion for summary judgment as to those claims will be denied unless he has shown by undisputed evidence that Plaintiff cannot satisfy another element of those claims.

1.   False Arrest Claim

In support of his motion for summary judgment, Defendant Harris correctly submits that the absence of probable cause to initiate a criminal proceeding is an essential element of a civil rights claim for false arrest and malicious prosecution. *See, e.g., Basile v. Township of Smith*, 752 F. Supp. 2d 643, 650-51 (W.D.Pa. 2010). As this Court stated in *Basile*:

> A claim for false arrest under Section 1983 originates from the Fourth Amendment guarantee against unreasonable seizures. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir.1995) (citing *Barna v. City of Perth Amboy*, 42 F.3d 809, 820 (3d Cir.1994) (other citations omitted)); *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir.2000) ("The Fourth Amendment prohibits arrest without probable cause.") (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir.1995)); *Kokinda v. Breiner*, 557 F.Supp.2d 581, 592 (M.D.Pa.2008) (citing *Groman*, *supra*; other citation omitted). Thus, to succeed on their false arrest claim under Section 1983, Plaintiffs must show that the arresting officers . . . lacked

---

[13] Also, as explained below, these statements are relevant to Plaintiff's abuse of process claim and the malice element of Plaintiff's malicious prosecution claim.

> probable cause to arrest them. *Groman*, 47 F.3d at 634; *Kokinda*, 557
> F.Supp.2d at 592 (citation omitted).

*Id.* (ellipses added); *see also Harvard*, 973 F.3d at 199 ("To bring a claim for false arrest, a plaintiff must establish '(1) that there was an arrest; and (2) that the arrest was made without probable cause.'" (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)).

Defendant Harris submits that because he had sufficient probable cause to believe that Plaintiff had committed the charged offenses at the time he was arrested, Plaintiff's claim of false arrest fails as a matter of law and therefore he is entitled to summary judgment on Plaintiff's claim of false arrest.  In response, Plaintiff simply states that Defendant Harris arrested him without probable cause.  ECF No. 53 at 1, ¶1.

As the Court has determined a question of fact exists as to whether probable cause existed to arrest Plaintiff, neither Plaintiff nor Defendant Harris is entitled to judgment as a matter of law on Plaintiff's false arrest claim.  Therefore, the Court will deny both Plaintiff's and Defendant Harris' motions for summary judgment as to Plaintiff's false arrest claim.

### 2.   Malicious Prosecution Claim Under § 1983

To prevail on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must show that:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir.2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003)) (footnote omitted).  Only the third and fourth elements are at issue here. [14]

As to the third element, Defendant Harris submits that Plaintiff's arrest was effectuated with probable cause (ECF No. 48 at 6-11) and there is no evidence of malice on his part (ECF No. 48 at 11-12, ECF No. 51 at 10).  And although malice may be inferred based on the absence of probable cause, Defendant Harris submits that Plaintiff has not made any such argument.  *Id.*

As discussed above, Plaintiff identifies information that was recklessly omitted from the affidavit of probable cause and fabricated evidence that was improperly included in the affidavit of probable cause.  The Court considered Plaintiff's argument and Defendant Harris' response and determined that a question of fact existed as to whether Defendant Harris had probable cause to arrest Plaintiff.  As such, Defendant Harris is unable to satisfy the third element at this juncture.

Next the Court must determine whether a reasonable juror could, viewing the facts in the light most favorable to Plaintiff, find that Defendant Harris acted with malice or for a purpose other than bringing Plaintiff to justice.  Actual malice has been defined by the Court of Appeals in *Lee v. Mihalich*:

> Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose. *Simpson*, 354 Pa. at 96, 46 A.2d at 678; *Ruffner v. Hooks*, 2 Pa. Superior Ct. 278, 282 (1896). *See also* Restatement (Second) of Torts § 668 (1977). Under this analysis, the elements of liability for the constitutional tort of malicious prosecution under § 1983 coincide with

---

[14] Defendant Harris has conceded that Plaintiff can meet the first two elements of a malicious prosecution claim. ECF No. 51 at 4.  The Court also notes that neither party addresses the fifth element of a Section 1983 malicious prosecution claim—a deprivation of liberty consistent with the concept of seizure withing the meaning of the Fourth Amendment.  As such, the Court will assume without deciding that the fifth element has been satisfied for summary judgment purposes only.

> those of the common law tort. *Compare Cap v. K–Mart Discount Stores, Inc.*, 357 Pa. Superior Ct. 9, 12, 515 A.2d 52, 53 (1986) *with Bell v. Brennan*, *supra.*

847 F.2d 66, 70 (3d Cir. 1988), *abrogated on other grounds*, *Albright v. Oliver*, 510 U.S. 266 (1994). *See also Lippay v. Christos*, 996 F.2d 1490, 1503 (3d Cir. 1993), *abrogated on other grounds*, *Albright v. Oliver*, 510 U.S. 266 (1994) ("As our use of the disjunctive in *Lee v. Mihalich* illustrates, malice can mean ill-will or the use of a prosecution for an extraneous purpose or a lack of belief in the guilt of the accused.")  In addition, malice may be inferred from the absence of probable cause.  *Lippay*, 996 F.2d at 1502 (citations omitted).

Defendant Harris argues that there is no allegation in Plaintiff's Second Amended Complaint nor evidence in the record to show that prior to the incident on August 14, 2020, he had any personal reason for pursing the instant charges against Plaintiff apart from bringing Plaintiff to justice.  ECF No. 48 at 12.  Defendant Harris further argues that there is nothing in the record to show that he knew or was aware of Plaintiff's identity.  *Id.*  Defendant Harris's argument misses the mark as these statements, even if true, do not address Plaintiff's evidence of malice.

Considering the evidence in the light most favorable to Plaintiff, the Court finds an issue of fact exists as to whether Defendant Harris acted with malice or a purpose other than bringing Plaintiff to justice.  As determined above, Defendant Harris omitted substantial relevant exculpatory information from the affidavit of probable cause that he submitted to the magistrate judge.  In addition, in opposing Plaintiff's motion for summary judgment, Defendant Harris seeks to add to the reconstructed affidavit *inculpatory* information regarding Plaintiff's footwear which Plaintiff contests as being fabricated.  Moreover, despite Trooper Harris' argument that Plaintiff has not offered any affirmative evidence of malice, Plaintiff has offered his sworn

statement that Defendant Harris was in the process of releasing Plaintiff from the scene when it was brought to his attention that another PSP trooper had been fired over an incident involving Plaintiff.[15]  *See* ECF No. 41 at 11, ¶ 46.  If a reasonable juror would find that probable cause to arrest Plaintiff was lacking, then a reasonable juror could also find that Defendant Harris omitted and fabricated evidence to charge Plaintiff with a crime in retaliation for Trooper Rokavec's firing.  Plaintiff also points to the fact that Defendant Harris continued the preliminary hearing several times over a seven-month period as evidence of malice.  Again, if a reasonable juror would conclude that probable cause to arrest was lacking, then a reasonable juror could also conclude that Trooper Harris knew that the charges would be dropped at the preliminary hearing but kept requesting continuances to punish Plaintiff over Trooper Rokovec's firing.

In light of the above, the Court concludes that a reasonable juror could find that Defendant Harris initiated proceedings against Plaintiff maliciously or for a reason other than bringing him to justice.  Accordingly, the Court will deny both Plaintiff's and Defendant Harris' motions for summary judgment as to Plaintiff's malicious prosecution claim.

### 3.   Illegal Search & Seizure Claim

Plaintiff asserts a claim for illegal search and seizure based on Defendant Harris' alleged confiscation of his truck, tools and property without probable cause.  *See* ECF No. 19 at 5, ¶24.  Plaintiff offers no further elaboration of this claim in either his Memorandum of Law or his responses to Defendant Harris' motion for summary judgment and supporting brief.

---

[15] The PSP trooper who was allegedly fired is Justin Rokavec. Plaintiff instituted a civil rights action against Rokavec on 12/20/21 at No. 2:21-cv-1836, W.D.Pa. over actions that occurred from 5/26/19 to 7/6/19.  *See* Am. Compl., No. 2:21-cv-1836, ECF No. 28 at 3-5.  In paragraph 20 of that Amended Complaint, Plaintiff alleges that Trooper Rokavec was terminated from the PSP due to negligence in that case.  *Id.* at 7.  It appears from another civil action in which Rokavec was named as a defendant that he was no longer employed as a PSP trooper as of 3/19/20.  *See* Complaint, ECF No. 1 at 3, ¶ 7 in *Burkland v. Carcella, et al.*, No. 2:20-cv-396, W.D.Pa. While employed by the PSP, Trooper Rokavec was assigned to Troop B Uniontown, *see id.* at ¶ 8, the same location as Defendant Harris, *see* Harris Decl. ¶ 4 (ECF No. 50-1 at 2).  It is certainly plausible that Defendant Harris knew Trooper Rokavec as they were both assigned to Troop B during the same time period.

In moving for summary judgment on this claim, Defendant Harris states that he conducted an inventory search of Plaintiff's vehicle to determine if evidence related to the charges of burglary or criminal trespass were present.  Because he had probable cause to arrest Plaintiff on charges of burglary or criminal trespass, Defendant Harris maintains that his search of Plaintiff's vehicle did not violate the Fourth Amendment.  In support of his argument, Defendant Harris cites *Pearson v. Krasley,* Civ. A. No. 16-0066, 2017 WL 2021061 (E.D.Pa. May 5, 2017), *aff'd* 715 F. App'x 112 (3d Cir. 2017).  In that case, the court explained:

> To recover money damages for an illegal search and seizure, the plaintiff "must prove, inter alia, that the search and seizure were illegal." *Gresh v. Godshall*, 170 Fed.Appx. 217, 220 (3d Cir. 2006) (citing to *Heck*, 512 U.S. at 487 n.7). A warrantless search is legal if supported by probable cause, and probable cause exists when, "viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id*. at 221 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In *Gresh*, the Third Circuit found there was probable cause to search a suspect's "car based on a named witness's statement that she had seen [him] carry electronic equipment from the burglary victims' home to his vehicle." *Id*. at 221 (citing to *Merkle v. Upper Dublin School District*, 211 F.3d 782, 790 (3rd Cir. 2000) ("knowledge of a credible report from a [single] credible eyewitness" is sufficient for probable cause)); *see also Hickson v. Marina Assocs*., 865 F. Supp. 2d 581, 588 (D.N.J. 2012) (no basis for relief under section 1983 for illegal search and seizure where defendant had probable cause to search person pursuant to a lawful arrest).

*Id.* at *4.  Here Misty Chapman told Defendant Harris she observed a man wearing a gray shirt (Dennis) walking inside the vacant house.  Nothing in her witness statement indicates that she observed either Plaintiff or Dennis carrying anything from the vacant house to their vehicle.  Moreover, as discussed above, a question of fact exists as to whether probable cause existed to arrest Plaintiff.  Therefore, to the extent Defendant Harris' request for summary judgment on Plaintiff's illegal search and seizure claim is predicated on his position that probable cause existed to arrest Plaintiff for burglary and criminal trespass, that request must be denied.

31

Accordingly, because a question of facts exists as to whether probable cause existed for the search of Plaintiff's vehicle, the Court will deny both Plaintiff's and Defendant Harris' motions for summary judgment as to Plaintiff's illegal search and seizure claim. [16]

B.    Fourteenth Amendment Due Process Claim

Plaintiff appears to be alleging for the first time on summary judgment that he attempted to retrieve his vehicle and tools but was unsuccessful due to Defendant Harris' due process violations.[17]  ECF No. 41 at 12, ¶ 50.  Plaintiff submits that his truck and tools were seized and released to someone other than the owner (Plaintiff) in total disregard of due process.  *Id.* at ¶ 54. In response, Defendant Harris submits that the undisputed evidence in the record shows that Plaintiff's vehicle was turned over to a third-party towing service at the scene because of Plaintiff's detention and arrest, Plaintiff was still at the scene when the towing company arrived to tow the vehicle, and after the vehicle was towed, Trooper Harris had no further dealings with it.  *See* Def's SMF, ECF No. 49 at 4, ¶¶ 20-21; Harris Decl. ¶¶ 25-27.  Plaintiff offers no evidence to dispute these statements of fact.

The Court finds that Plaintiff's due process claim fails as a matter of law.  The Fourteenth Amendment provides that the State may not "deprive any person of life, liberty, or property

---

[16] Defendant Harris argues, in the alternative, that he is entitled to qualified immunity on any Fourth Amendment claim regarding the impoundment of Plaintiff's vehicle based on *Mawson v. Pittston City Police Department*, Civ. A. No. 3:16-400, 2020 WL 6083332, at *3-*4 (M.D.Pa. Oct. 15, 2020).  However, that case is inapposite to the case at bar as the issue in *Mawson* was whether the unlawfulness of the defendants' conduct in electing to tow the vehicle was clearly established and finding that it was not, the court of appeals held that defendants were entitled to qualified immunity with regard to the impoundment of the vehicle. *Id.* at *4. Here Plaintiff is not challenging Defendant Harris' decision to tow his vehicle from the scene. Moreover, in determining whether qualified immunity applies, the court must determine "whether the facts the plaintiff has . . . shown . . . make out a violation of a constitutional right."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Here an issue of fact exists as to whether a constitutional violation occurred, i.e., lack of probable cause for the search and seizure of Plaintiff's vehicle, thus precluding a determination of whether qualified immunity applies at the summary judgment stage. The Court is especially hesitant to conduct a qualified immunity analysis given Defendant Harris' undeveloped argument on its application.  *See* ECF No. 48 at 17.

[17]The Court will briefly address this claim notwithstanding that claims may not be raised for the first time at the summary judgment stage.

without due process of law." U.S. Const. amend. XIV. An examination of a procedural due process claim under the Fourteenth Amendment proceeds in two steps. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972). First, the court must determine whether there exists a liberty or property interest which has been interfered with by the state. *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Board of Regents*, 408 U.S. at 571). Second, and if and only if a petitioner establishes the existence of a protected interest, the court must examine whether the procedures attendant upon that deprivation were constitutionally sufficient. *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).

Here Plaintiff's ownership in the Chevy S10 constitutes a property interest for purposes of the Due Process Clause. *See Stasko v. Lebanon Cnty. Drug Task Force*, Civ. No. 1:12-cv-1156, 2012 WL 6561726, at *8 n. 6 (M.D.Pa. Dec. 17, 2012) (finding plaintiff had a property interest in his Ford Bronco).  In support of his due process claim, Plaintiff points to the Seized-Towed Details in Defendant Harris' General Offense Report—Operational Status Closed, which lists Dennis as the "related owner."  ECF No. 41 at 9, ¶ 34 (citing ECF No. 40-8).  Plaintiff argues that if Defendant Harris had done a minimal investigation he would have known that the vehicle was registered to him.  *Id.* at 10, ¶ 35.  Plaintiff further argues that Defendant Harris did not properly fill out the release information and released his vehicle to the towing company without notifying him.  However, the evidence upon which Plaintiff relies does not show that he was denied notice and an opportunity to be heard by Defendant Harris.

First, the Seized-Towed Details is inconclusive at best—it shows merely that Dennis was a "related owner" not the owner.  Second, Plaintiff's statement that Defendant Harris did not properly fill out the release information is pure speculation on his part, which is insufficient to raise an issue of fact at the summary judgment stage.  Moreover, neither of these contentions is

relevant to whether Plaintiff received adequate notice under the Due Process Clause.  On the

other hand, Plaintiff did have notice that his vehicle was being towed by Professional Auto as he

observed it first-hand.  As such, Plaintiff has failed to raise an issue of fact for the jury as to the

notice requirement of procedural due process claim.  Moreover, because Defendant Harris never

had custody of his vehicle, no process was due by Defendant Harris.   Therefore, the Court finds

that Defendant Harris is entitled to summary judgment as a matter of law on Plaintiff's

procedural due process claim.[18]

> C.     <u>Abuse of Process Claim</u>

An action for abuse of process is quite different than an action for malicious prosecution.

The United States District Court for the Middle District of Pennsylvania has considered the

following:

> The gist of an action for abuse of process is the improper use of process
> after it has been issued, that is, a perversion of it. . . . [Malicious
> prosecution] has to do with the wrongful initiation of such process, while
> abuse of civil process [or criminal process] is concerned with a perversion
> of a process after it is issued.

*Bristow v. Clevenger*, 80 F. Supp.2d 421, 430 (M.D. Pa. 2000) (quoting *McGee v. Feege*,535

A.2d 1020, 1023 (Pa. 1987) (internal quotations and citations omitted)).  Consequently, Plaintiff

will prevail on a § 1983 claim for abuse of process where "prosecution is initiated legitimately

and thereafter is used for a purpose other than that intended by the law."  *Bristow*, 80 F. Supp.2d

at 431 (quoting *Rose v. Bartle*, 871 F.2d 331, 350 (3d Cir. 1989) (other citations omitted)).

Again, the *Bristow* court explained as follows:

---

[18] To the extent Defendant Harris is asserting, in the alternative, a qualified immunity defense to Plaintiff's
procedural due process claim, the Court need not address that argument having concluded that Plaintiff's due
process claim fails as a matter of law.  Indeed, it is not clear from Defendant Harris' brief whether he is actually
asserting a qualified immunity defense as to the procedural due process claim too as he appears to be asserting this
defense as to the Fourth Amendment impoundment claim.  In any event, his argument is completely undeveloped.
*See* ECF No. 48 at 17.

> Courts have held that "[w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained." . . . "Examples of actions that are recoverable under the abuse of process tort are extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." . . . "To establish a claim for abuse of process, there must be some proof of a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process.'"

*Bristow*, 80 F. Supp.2d at 431 (internal citations omitted).

Defendant Harris contends that he is entitled to summary judgment on Plaintiff's abuse of process claim because by asserting this claim, Plaintiff is conceding that the criminal action filed by him was "initiated legitimately." ECF No. 48 at 13. The Court finds no merit to this argument as it assumes incorrectly that the legitimate initiation of criminal process is all that is required to prove an abuse of process claim. To the extent Defendant Harris is attempting to argue that Plaintiff's abuse of process claim must fail because he is asserting that the criminal action was not initiated legitimately with regard to his malicious prosecution claim, that argument is premature because as noted above, the Court has concluded that a question of fact exists as to whether the criminal proceedings against Plaintiff were initiated legitimately for purposes of his malicious prosecution claim.[19]

Defendant Harris further contends that both the Second Amended Complaint and summary judgment record are completely lacking in evidence to support such a claim, as there are no allegations that the filing of charges by Defendant Harris was undertaken for any improper or abusive purpose. ECF No. 48 at 13. Although a close question, the Court finds that

---

[19] Moreover, to the extent that Defendant Harris is attempting to argue that by filing as abuse of process claim, Plaintiff has conceded that the criminal process was initiated legitimately, which undermines his malicious prosecution claim, the Court rejects any such argument. Plaintiff is well within his rights to assert claims in the alternative whose elements may be contradictory.

Plaintiff has come forward with evidence of acts from which a reasonable juror could conclude were aimed at using the criminal process for an improper purpose.

In support of his abuse of process claim, Plaintiff submits that by continuing the preliminary hearing several times over an eight-month period when Defendant Harris knew all charges would be dismissed, Defendant Harris was using the criminal process for an improper purpose (*id.* at ¶ 48).  Also relevant to the abuse of process claim is Plaintiff's assertion that preliminary hearing was being continued on numerous occasions as a punishment in retaliation for his involvement in Trooper Rokavec's firing.[20]   Based on this undisputed evidence, the Court concludes that a reasonable jury could find that Defendant Harris pursued criminal proceedings against Plaintiff for an improper purpose.  Consequently, both Plaintiff's and Defendant Harris' motions for summary judgment on Plaintiff's abuse of process claim will be denied.

D.    <u>Defamation Claim</u>

In his Second Amended Complaint, Plaintiff asserts a defamation claim against Defendant Harris for "arresting [him] for a crime that never occurred, then forwarding that false information to be published in the local newspaper . . .."  ECF No. 19 at 5, ¶ 23.  Defendant Harris seeks summary judgment on Plaintiff's defamation claim regardless of whether it is analyzed under the Fourteenth Amendment or state tort law.  Plaintiff has not responded to Defendant Harris' arguments in support of summary judgment on his defamation claim.

---

[20] Plaintiff also offers other evidence in support of his abuse of process claim—that Defendant Harris fabricated evidence and omitted exculpatory evidence in the affidavit of probable cause (ECF No. 41 at 15, ¶ 55) to project probable cause where none existed to obtain an unlawful arrest warrant (id. at ¶ 51).  However, that evidence is not relevant to his abuse of process claim as those acts go to whether the criminal proceedings were initiated illegitimately, which is relevant to his malicious prosecution claim.

1.     Fourteenth Amendment Defamation Claim

"[D]efamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark v. Twp. of Falls,* 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul v. Davis*, 424 U.S. 693, 701-12 (1976)).  The Court of Appeals has clarified that "reputation *alone* is not an interest protected by the Due Process Clause." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (quoting *Versarge v. Twp. of Clinton, NJ*, 984 F.2d 1359, 1371 (3d Cir. 1993) (citing *Paul v. Davis, supra*)) (quotation marks and footnote omitted); *see also Dee v. Borough of Dunmore*, 549 F.3d 225, 233 (3d Cir. 2008) (citing *Clark*, 890 F.2d at 619)).  Thus, to establish a due process claim for deprivation of a liberty interest in reputation, a plaintiff must demonstrate "a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill*, 455 F.3d at 236 (citing *Paul*, 424 U.S. at 701) (emphasis in original)(other citations omitted). This is generally referred to as the "stigma-plus" test. *Id.* (citations omitted).  "To satisfy the 'stigma' prong of the test, it must be [shown] that the purportedly stigmatizing statement(s) (1) were made publicly, . . . and (2) were false." *Id.* (citations omitted).  To satisfy the "plus" requirement, a plaintiff must show that the alleged defamation which harmed his reputation "occur[red] in the course of or [was] accompanied by extinguishment of a right or status guaranteed by law or the Constitution." *Id.* at 235.

Here Defendant Harris argues that Plaintiff has made no effort to establish the "plus" factor and therefore he is entitled to summary judgment on that basis alone.  In support of his argument, Defendant Harris cites *Simonson v. Borough of Taylor*, 839 F. App'x 735, 740 (3d Cir. 2020), a case somewhat similar to the case at bar.  In that case, the police chief held a press conference to announce the plaintiff's arrest which was then reported in the news.  The plaintiff

maintained his innocence throughout the process and the charges were eventually dismissed when it was determined that the witness lied to police.  *Id.* at 737.  The plaintiff claimed that his reputation was harmed following news stories about his arrest and that the harm constituted a due process violation.  *Id.* at 740.  The Court of Appeals rejected the plaintiff's argument that because there was no probable cause for his arrest, he established the "plus" factor, concluding instead that the officers did have probable cause for his arrest and therefore he failed to "show a … deprivation of some additional right or interest."  *Id.* (quoting *Dee v. Borough of Dunmore*, 549 F.2d 225, 233-34 (3d Cir. 2008)(internal quotation marks omitted).

 Similarly here, Defendant Harris argues that because he had probable cause to arrest Plaintiff, Plaintiff cannot establish the "plus" factor as a matter of law.  However, as discussed above, a question of fact exists as to whether Defendant Harris had probable cause to arrest Plaintiff.  As such, the Court finds that Defendant Harris is not entitled to judgment as a matter of law on that basis.[21]  If Plaintiff is able to prove at trial that probable cause did not exist for his arrest, then he could arguably establish the "plus" prong of the "stigma plus" test.

Nonetheless, the Court finds that Plaintiff has not established the "stigma" prong of the "stigma plus" test.  Plaintiff has not proffered any evidence to support his allegation that Defendant Harris forwarded false information about his arrest to the local newspaper for publication, nor was there any press conference as in *Simonson*.  At the summary judgment stage, he can no longer rely on the allegations in his Second Amended Complaint but must come forward with evidence to support his allegation and he has not.  On the other hand, Defendant Harris submitted a sworn Declaration in which he attests that he "personally did not forward or send, or cause to [be] forwarded or sent, any information about his incident to any media outlet."

---

[21] The Court notes that Plaintiff has not asserted any other basis to establish the "plus" element.

Harris Decl. ¶ 31, ECF No. 50-1 at 4.  This evidence is uncontested.  As such, Plaintiff has failed

to demonstrate that Defendant Harris publicly made statements about his arrest.  Therefore, even

if Plaintiff can prove the "plus" factor, his Fourteenth Amendment defamation claim still fails as

he cannot prove the "stigma" factor of the "stigma plus" test.

2.    <u>State Tort Law Defamation Claim</u>

Defendant Harris further argues that to the extent  Plaintiff is asserting a defamation

claim under Pennsylvania tort law, he has sovereign immunity from such claim because

preparing police reports would fall within the scope of his employment.  Pennsylvania law

provides that "the Commonwealth, and its officials and employees acting within the scope of

their duties, shall continue to enjoy sovereign immunity and official immunity and remain

immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa.

Cons. Stat. Ann. § 2310.  "The Pennsylvania legislature has not waived this immunity for

intentional torts, including defamation . . .."  *Bailey v. Wetzel*, Case No. 2:21-cv-179, 2021 WL

5280926, at *7 (W.D.Pa. Nov. 12, 2021)(citing cases).  *See also* 42 Pa. Cons. Stat. Ann. § 8522

(listing exceptions to sovereign immunity, and defamation is not listed).  Generally the filing of

criminal charges against a person believed to have committed a crime falls within the job duties

of a Pennsylvania State Trooper.  *See Lynch v. Johnston*, 463 A.2d 87, 90 (Pa. Commw. Ct.

1983) ("it goes without saying that police are authorized to make arrests . . ..").

"However, the protection of sovereign immunity only limits liability when a

Commonwealth employee acts within the scope of his duties."  *Soler v. Vanim*, Civ. A. No. 06-

4975, 2007 WL 9810902, *7 (E.D.Pa. Nov. 19, 2007)(citing *Williams v. Stickman*, 917 A.2d

915, 917 (Pa. Commw. Ct. 2007)).  Where lack of a lawful justification is an element of an

intentional tort, and the plaintiff has established the prima facie elements of that intentional tort,

the plaintiff will be deemed to have established that the Commonwealth employee was acting outside the scope of his duties, thus defeating sovereign immunity.  *Id*.   The Court need not consider whether Defendant Harris was acting outside the scope of his employment when he allegedly defamed Plaintiff because Plaintiff has failed to establish a prima facie element of his state tort law defamation claim.

Defendant Harris argues, in the alternative, that Plaintiff's defamation claim is meritless under Pennsylvania law, citing in support *Chandler v. McEvoy*, No. 2:20-cv-00026, 2021 WL 7501829, *3 (W.D.Pa. Nov. 23, 2021), *report and recommendation adopted*, 2022 WL 456599 (W.D.Pa. Feb. 15, 2022).  The Court agrees with Defendant Harris.  As the district court noted in *Chandler*, "[u]nder Pennsylvania law, to state a claim for defamation, a plaintiff must allege facts showing that the defendant uttered the words that allegedly defamed him." 2021 WL 7501829, at *3 (citing *Cruz v. M.S.*, No. 1:18cv0051, 2018 WL 1980343 at *2 (W.D. Pa. Apr. 27, 2018)).  As noted above, Defendant Harris submitted a sworn Declaration in which he attests that he "personally did not forward or send, or cause to [be] forwarded or sent, any information about his incident to any media outlet."  Harris Decl. ¶ 31, ECF No. 50-1 at 4.  This evidence is uncontested.  As such, Plaintiff has failed to demonstrate that Defendant Harris published or caused to be published the allegedly defamatory remarks.  Because Plaintiff has not provided any evidence to establish the publication element of his defamation claim, that claim fails as a matter of law.

In summary, Plaintiff has failed to prove an essential element of both his Fourteenth Amendment defamation and state tort law defamation claim.  Accordingly, the Court will grant summary judgment in favor of Defendant Harris on Plaintiff's defamation claim and deny Plaintiff's motion for summary judgment as to his claim.

IV.     <u>CONCLUSION</u>

For the reasons discussed above, the Motion for Summary Judgment filed by Plaintiff,

Chad E. St. Clair (ECF No. 40) will be denied.  The Motion for Summary Judgment filed by

Defendant Ronald V. Harris, Jr. (ECF No. 47) will be granted in part and denied in part.  It will

be granted as to Plaintiff's defamation claim and Fourteenth Amendment Due Process Claim but

denied as to all remaining claims.

An appropriate Order will follow.

Dated: June 20, 2023                              **BY THE COURT**

                                                  _____
                                                  LISA PUPO LENIHAN
                                                  United States Magistrate Judge

cc:     Chad E. St. Clair
        138 Bessemer Road
        Masontown, PA  15461
        *Via First Class, U.S. Mail*

41